# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROSE M. SALYER, | : | Case No. 3:11-cv-265 |
| Plaintiff, | | District Judge Thomas M. Rose |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g) and 1382(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Rose M. Salyer ("Plaintiff") "not disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").

The case is before the Court upon Plaintiff's Statement of Errors (doc. 10), the Commissioner's Memorandum in Opposition (doc. 12), Plaintiff's Reply (doc. 13), the administrative record (doc. 7), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed her DIB and SSI applications in March 2007, alleging a disability onset date of July 1, 2003. Doc. 7-5 at PageID 150-56. Plaintiff claims she is disabled due to bipolar disorder, post-traumatic stress disorder, and "problems with her ears." Doc. 7-6 at PageID 199.

Following initial administrative denials of Plaintiff's application, Plaintiff received a hearing before ALJ Janice Bruning on April 19, 2010. Doc. 7-2 at PageID 51-70. On June 28, 2010, ALJ Bruning issued a written decision, finding Plaintiff "not disabled." *Id.* at PageID 28-44. The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since July 1, 2003, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; mild acromioclavicular osteoarthritis with associated impingement, right shoulder; plantar fasciitis, bilateral feet; bipolar disorder; post-traumatic stress disorder; and history of alcohol abuse (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with limitations: The claimant can lift a maximum of 20 pounds occasionally and lift and carry up to 10 pounds frequently, stand and/or walk about 6 hours in a normal 8-hour workday, sit about 6 hours in a normal 8-hour workday, and push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting subject to postural limitations of occasionally climbing stairs, ramps, ladders, ropes,

or scaffolds, and occasionally balancing, stooping, crouching, kneeling or crawling; a manipulative limitation of occasionally reaching out with dominant right upper extremity, and to non-exertional limitations of performing unskilled work that requires performance of simple, repetitive 1-, 2-, 3-, or 4-step task and that requires occasional contact with supervision and co-workers, and minimal contact with the public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on March 1, 1971, and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (*see*, SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from July 1, 2003, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

*Id.* at PageID 33-43.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. *Id.* at PageID 23-25; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then timely filed this appeal on July 28, 2011. Doc. 1.

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff was 32 years old on her alleged disability onset date and thus considered a "younger individual." *See* 20 C.F.R §§ 404.1563, 416.963. Plaintiff has her GED, and her past relevant work was as a caregiver and packager. Doc. 7-2 at PageID 54, 67.

Before the ALJ, Plaintiff testified that she has not worked since July 2003.[2] *Id.* at PageID 55. Plaintiff testified that she has bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety and depression. *Id.* at PageID 63. She also has a history of alcohol abuse, but testified that she has been sober for three years. *Id.* at PageID 57. She reported that she generally sees a psychiatrist on a frequent basis. *Id.* at PageID 56.

Plaintiff takes classes at a community college. *Id.* at PageID 58-59. She studies mental health and hopes to become a chemical dependency counselor. *Id.* She is on-campus twice a week and takes online classes. *Id.* In addition, Plaintiff receives on-campus disability tutoring approximately two or three hours per week. *Id*. at PageID 64. She reported that she experiences social anxiety when she is on-campus. *See id.* at PageID 58.

Plaintiff testified that she is capable of performing most daily activities, such as cooking, doing laundry, cleaning, taking out the garbage, *etc.*, but she lacks the motivation to do these activities regularly. *See id*. at PageID 60-61. Plaintiff further testified that she attends Alcoholics Anonymous meetings and occasionally attends church. *Id.* at PageID 57, 60-61.

Vocational Expert ("VE") Leanne Kehr also testified at the administrative hearing. *Id.* at PageID 66-69. Based on Plaintiff's age, education, work experience and RFC, the VE testified there were more than 55,000 light jobs and 15,000 sedentary jobs available in the regional economy that Plaintiff can perform. *See id*. at PageID 67-68.

---

[2] Although Plaintiff testified that she had not worked since 2003, her medical records indicate she may have worked since then. Doc 7-7 at PageID 344, 372-74, 379; Doc. 7-8 at PageID 484; Doc. 7-9 at PageID 778.

## II. APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or

her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

In her Statement of Errors, Plaintiff challenges the ALJ's RFC finding – arguing it fails to account for her inability to handle stress. *See* doc. 10 at PageID 1409-16. Specifically, she contends the ALJ failed to (1) give proper weight to her treating source opinions, and (2) address two state agency medical consultant opinions. *See id.* The Court finds Plaintiff's arguments unpersuasive. The ALJ reasonably considered the medical evidence of record. The ALJ

likewise considered Plaintiff's difficulty dealing with stress in assessing her RFC: she restricted Plaintiff to "unskilled work that requires performance of simple, repetitive 1-, 2-, 3-, or 4-step tasks and that requires occasional contact with supervision and co-workers, and minimal contact with the public." Doc. 7-2 at PageID 38.

### A. Treating Sources

Plaintiff was treated by various mental health professionals at the South Community Behavioral Healthcare in Dayton, Ohio.[3] She contends that the ALJ did not afford proper weight to two of her "treaters" there: a psychiatrist, Susan Songer, M.D.; and a psychiatric nurse practitioner, Cynthia Van Ausdal, M.S.N., C.N.S. *See* doc. 10 at PageID 1409-14.

#### 1. Psychiatrist Susan Songer, M.D.

Dr. Songer completed a Mental Functional Capacity Assessment form with respect to Plaintiff on April 16, 2007. Doc. 7-12 at PageID 1383-84. She reported that Plaintiff was "markedly" and/or "moderately" limited in seventeen categories of mental functioning. *Id.* According to the record, Dr. Songer only saw Plaintiff one time – on April 16, 2007, when she completed this form. *See* doc. 7-11 at PageID 1100-01; doc. 7-12 at PageID 1383-85.

Plaintiff correctly argues that the ALJ did not mention Dr. Songer's medical opinion in her written decision. However, this only amounts to harmless error because Dr. Songer is not Plaintiff's treating physician. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). To qualify as a treating source, a doctor must have an ongoing treatment relationship with the claimant, seeing him or her "'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required that is typical for the treated condition(s).'" *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20

---

[3] Plaintiff was in individual and group counseling at South Community from November 2006 until October 2009. *See* doc. 7-10 at PageID 785-1003; doc. 7-11 at PageID 1005-1259; doc. 7-12 at PageID 1263-1325, 1340-65. Plaintiff does not mention a medical opinion from her treating therapist, however.

7

C.F.R. § 404.1502) (brackets omitted).  The only medical record from Dr. Songer is the Mental Functional Capacity Assessment form she completed in April 2007.  Doc. 7-12 at PageID 1383-84.  This one medical record is insufficient to establish Dr. Songer as Plaintiff's treating physician.  *Cf. Smith,* 482 F.3d at 876 (finding that a doctor who completed one evaluation was not a treating physician); *Roark v. Comm'r of Soc. Sec.*, No. 1:10-cv-739, 2011 WL 6751190, at *17 (S.D. Ohio Nov. 29, 2011) (finding that a psychiatrist who only completed one evaluation of the claimant did not qualify as a treating doctor).

Moreover, Dr. Songer's medical opinion does not support Plaintiff's disability claim.  Dr. Songer expected Plaintiff's mental limitations to last only nine to eleven months.  Doc. 7-12 at PageID 1383-84.  Under Social Security regulations, a claimant's impairment(s) must last or be expected to last at least *twelve* months to constitute a disability.  *See* 20 C.F.R. § 404.1505(a) (emphasis added).  Accordingly, any error by the ALJ was harmless.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *see also Troxel v. Comm'r of Soc. Sec.*, No. 1:10-cv-755, 2012 WL 289933, at *11 (S.D. Ohio Jan. 31, 2012) (finding harmless error when the ALJ failed to address a medical opinion that Plaintiff's limitations would last between nine and eleven months).

### 2.   Nurse Practitioner Cynthia Van Ausdal, M.S.N., C.N.S.

Plaintiff argues that the ALJ also erroneously rejected two medical opinions by Ms. Van Ausdal.  *See* doc. 10 at PageID 1411-12.  The first opinion is in the form of a "Mental Status Questionnaire" dated October 19, 2007.  Doc. 7-11 at PageID 1006-08.  Ms. Van Ausdal indicated that Plaintiff is easily distracted and inattentive; tends to isolate herself; and needs a stable routine in order to be productive.  *See id.*  The second opinion, a letter to Plaintiff dated April 18, 2008, states that Plaintiff's symptoms of bipolar disorder and PTSD preclude her from

working full-time or part-time. *See* doc. 7-10 at PageID 785. Ms. Van Ausdal also noted, however, that she has hope Plaintiff's treatment will allow her to be employable in the future. *See id.*

Ms. Van Ausdal, a nurse practitioner, is not an "acceptable medical source" under Social Security regulations. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Thus, Ms. Van Ausdal cannot establish the existence of a medical impairment, though she "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* The ALJ must apply the relevant factors – including "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion" – and explain her reasons for discounting Ms. Van Ausdal's medical opinion. *See id.* (citing SSR 06-03P, *available at* 2006 WL 2329939).

The ALJ considered Ms. Van Ausdal's medical opinions, but found they were not entitled to any weight. *See* doc. 7-2 at PageID 41. Specifically, the ALJ stated as follows:

> As for the opinion evidence, the claimant's primary psychiatric-care provider [Ms. Van Ausdal] provided two opinions with regard to the claimant's allegation of disability and both are given no weight. In the first, dated April 18, 2008, the care provider admitted that the claimant had entered into treatment only 17 days earlier (Exhibit 16F at 1). The care provider only related the claimant's complaints, the diagnoses provided, and the psychotropic medications prescribed *(id.).* The care provider implied that the claimant is disabled *(id.),* but did not submit any treatment records in support.
>
> The second opinion statement was dated on October 19, 2007, and was based on treatment provided from March 2007 through June 2007 (Exhibit 17F at 2). The care provider wrote that the claimant's ability to maintain attention was "good," yet asserted that the claimant had difficulty finishing what she started because the claimant "is distractible and inattentive" (Exhibit 17F at 3). The care provider opined that the claimant tended to isolate and required stability of routine to feel safe due to past traumatic events *(id.).* The care provider opined that the claimant had difficulties with sudden changes in routine, changes in her environment, and being around new people, and that those difficulties would limit her ability to be productive *(id.).* This opinion is not supported by the medical record. For example, by December 2008, the claimant's therapist observed the claimant's affect as clear, calm, and relaxed when socializing with peers at a holiday party in December 2008, noting the claimant

smiled a lot and that she engaged in conversation (Exhibit 19F at 57). The therapist described the claimant as "expansive," noting that she interacted properly with her peers, the claimant telling them how good it was to see them (Exhibit 19F at 58). During that same time, the claimant would have finished a college quarter having earned grades that placed her on the Dean's List *(see,* Exhibit 19F at 4).

*Id.*

The Court finds that the ALJ's decision – to accord "no weight" to Ms. Van Ausdal's opinion – is supported by substantial evidence. It appears the ALJ misconstrued Ms. Van Ausdal's April 2008 opinion – by noting that Plaintiff had only entered into treatment seventeen days before the date of her opinion[4] - because the record shows that Plaintiff had been seeing Ms. Van Ausdal since 2007. Nonetheless, as the ALJ explained, Ms. Van Ausdal's disability finding is internally inconsistent and not supported by her treatment records. To that end, the Court notes that Ms. Van Ausdal did not provide counseling to Plaintiff; rather, she merely managed her medications. *See, e.g.* doc. 7-11 at PageID 1091-93, 1102-05, 1212-14, 1248-51; doc. 7-12 at PageID 1344-45, 1354-55, 1358-59, 1363-64.

Further, Ms. Van Ausdal's opinion is not supported by the record as a whole. Plaintiff's mental health treatment records reveal that her impairments are well-controlled with medication. Indeed, she was discharged from therapy in October 2009 due to her improvements, such as making Dean's List at Sinclair Community College, and because she is stable with her medication. Doc. 7-12 at PageID 1339. *See Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 994 (6th Cir. 2007); *Houston v. Sec'y of Health & Human Servs.*, 736 F. 2d 365, 367 (6th Cir. 1984) (finding an impairment that is well-controlled with medication is not "disabling").

---

[4] The letter, dated April 18, 2008, stated, "[w]hen I met with you on 4/1/08 . . . I noted you were still having issues . . . ." Doc. 7-10 at PageID 785. The ALJ interpreted this as indicating that Ms. Van Ausdal saw Plaintiff for the first time on April 1, 2008. However, the record shows that Plaintiff had been seeing Ms. Van Ausdal since 2007. Thus, Ms. Van Ausdal was merely referring to Plaintiff's most recent visit on April 1, 2008.

Moreover, Plaintiff's reported daily activities do not support a disability finding. Plaintiff is doing well in her community college classes at Sinclair. *See* doc. 7-12 at PageID 1264. Plaintiff told an evaluating psychiatrist that, among other things, she does household chores, goes grocery shopping two to three times a week, attends church, attends Alcoholic Anonymous meetings three to four times per week, and goes out to restaurants and the movie theatre. Doc. 7-9 at PageID 680. Thus, the ALJ reasonably declined to give any weight to Ms. Van Ausdal's suggestion that Plaintiff is disabled.

**B.     State Agency Consulting Opinions**

Additionally, Plaintiff argues the ALJ failed to give proper weight to the medical opinions of two State agency doctors: Jerry Flexman, Ph.D., a clinical neuropsychologist; and Stephen Halmi, Psy.D., a psychologist. *See* doc. 10 at PageID 1412-15. Notably, neither doctor opined that Plaintiff was "disabled." Further, contrary to Plaintiff's contentions, neither doctor opined that Plaintiff is unable to withstand *any* stress at work, nor unable to meet production quotas.

Dr. Flexman evaluated Plaintiff in May 2007, and opined that she had "moderate" limitations in interacting with the public, supervisors, and co-workers; "moderate" limitations in being able to respond appropriately to work pressures and changes in a work setting; and any other limitations were "slight."[5] Doc. 7-9 at PageID 679-83. Dr. Halmi evaluated Plaintiff in October 2007. *Id.* at PageID 776-83. He opined that she was "moderately" impaired in her ability to do the following: concentrate on tasks; get along with others, including co-workers, supervisors, and the general public; and manage daily stressors associated with routine work. *Id.*

---

[5] "Moderate" is defined as "moderate limitations in this area, but the individual is still able to function satisfactorily." Doc. 7-9 at PageID 682. "Slight" is defined as "[t]here are some mild limitations in this area, but the individual can generally function well." *Id.*

11

Further, Dr. Halmi opined that Plaintiff "could function in a very structured environment with a patient supervisor and limited contact with the public." *Id.* at PageID 782.

The ALJ did not discuss these State Agency medical consultants' medical opinions in assessing Plaintiff's RFC. *See* doc. 7-2 at PageID 37-42. Nonetheless, this only amounts to harmless error because the ALJ properly accounted for their recommended limitations in formulating Plaintiff's RFC. As noted above, the ALJ restricted Plaintiff to (1) unskilled work; (2) requiring only "simple, repetitive 1-, 2-, 3- or 4-step tasks"; (3) requiring only occasional contact with supervision; and (4) requiring no more than minimal contact with the public. Doc. 7-2 at PageID 38. These additional restrictions are consistent with the medical opinions of Dr. Flexman and Dr. Halmi – that Plaintiff had some moderate limitations in concentrating, interacting with others, and dealing with workplace stress. *See Wilson*, 378 F.3d at 547 (noting that an ALJ's error is harmless when the ALJ's findings are consistent with the opinions of record); *cf. Torres v. Comm'r of Soc. Sec.*, No. 1:10-cv-109, 2011 WL 3107352, at *8 (S.D. Ohio July 26, 2011) (finding the ALJ sufficiently accounted for the claimant's mental limitations by restricting her to "simple unskilled" work).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and

2. This case be **CLOSED**.

| | |
|---|---|
| August 3, 2012 | **s/Michael J. Newman** |
| | United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).